Christmann Veneer & Lumber Company, a Corporation v. Commissioner.
Christmann Veneer & Lumber Co. v. Commissioner
Docket No. 4916.
United States Tax Court
1945 Tax Ct. Memo LEXIS 195; 4 T.C.M. (CCH) 529; T.C.M. (RIA) 45174; May 16, 1945
Clarence T. Case, Esq., and David W. Voyles, Esq., Boatmen's Bank Bldg., St. Louis, Mo., for the petitioner. Roy C. Hormberg, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent has determined a deficiency of $7,928.34 in petitioner's income tax for the year 1941 which petitioner challenges by this proceeding. The only issue contested by petitioner is respondent's determination that it was liable to section 102 surtax by reason of failure to distribute earnings with the purpose of avoiding surtax on its stockholders. Findings of Fact Petitioner is a Missouri corporation doing busines in St. Louis, Missouri. It is engaged in the lumber, veneer, and plywood business. The company was incorporated January 22, 1917, with a paid-up capital of $10,000, by Fred G. and William *196 E. A. Christmann who now hold the offices of president and secretary-treasurer, respectively. In 1924 Martin Beckmeier, who is now vice president, entered the company by investing $91,666.66 for which he received a third interest, the company's capital stock being increased to $275,000. The remaining two-thirds was held equally by the two Christmanns, who made small equalizing additional capital contributions at that time. Petitioner's return for 1941 was filed with the collector of internal revenue, St. Louis, Missouri. Petitioner's net profit for the year 1941, taking into consideration the income and excess-profits tax for 1940, which was paid in 1941, but not the income and excess-profits tax for 1941, was $65,331.66. Petitioner's net profit for income tax purposes for the year 1941, after deducting its income and excess-profits taxes for that year (but not deducting its income and excess-profits tax for 1940) was $42,580.31. In 1941 petitioner paid dividends of $13,750, leaving undistributed profits to accumulate in the sum of $28,830.31. Had the $28,830.31 in undistributed profits, which were accumulated, been paid out in dividends to the three stockholders according to their *197 respective stockholdings, additional income taxes would have been payable by the respective stockholders in the total sum of $12,529.32. Petitioner's net profit (or loss in parentheses) for the years 1924 to 1941, inclusive, was as follows: 1924
($12,899.23)
1925
( 3,006.42)
1926
8,051.49
1927
58,697.10
1928
31,888.02
1929
25,033.47
1930
( 8,851.67)
1931
( 8,473.57)
1932
( 28,800.53)
1933
3,802.84
1934
4,887.51
1935
8,902.99
1936
9,889.60
1937
9,718.13
1938
14,087.89
1939
13,651.69
1940
27,917.70
1941
65,331.66
Petitioner's surplus for the years 1924 to 1941, inclusive, was as follows: 1924
($12,899.23)
1925
( 15,905.65)
1926
( 7,521.47)
1927
51,175.63
1928
83,273.37
1929
108,295.62
1930
99,580.27
1931
91,106.70
1932
62,324.73
1933
66,127.57
1934
71,015.08
1935
79,918.07
1936
97,185.66
1937
106,698.16
1938
120,786.05
1939
120,687.74
1940
137,602.10
1941
192,163.83
The $192,163.83 surplus for 1941 was subject to liability for 1941 Federal taxes of $30,762.52 and state taxes of $1,319.92, resulting in a 1941 net surplus of $160,081.40. Petitioner's cash on hand at the end of *198 1941, just prior to making loans of $12,000 to each of its three shareholders, and including the $20,000 invested in United States Government bonds purchased in 1941 and yielding about 2 percent, was $96,934.80. Petitioner's cash on hand at the end of 1940 was $66,024.46. In none of the years 1930 to 1939, inclusive, did petitioner's cash on hand, plus investments in securities, exceed $44,996.50. Petitioner's only outstanding liabilities at the end of 1941 were accounts payable in the sum of $2,893.23 and accrued income and excessprofits taxes not yet due in the sum of $32,828.93. During 1941 each of the three shareholders received a salary of $12,000 from petitioner. On December 24, 1941, petitioner loaned $36,000 in equal portions of $12,000 each to its three stockholders. As of the date of hearing $10,000 of the $36,000 loan had been repaid. William Christmann used the money loaned to him to purchase a farm. The loans were made to the other two shareholders in order to equalize the distributions and to treat them on the same basis as William Christmann. Loans had previously been made to the three stockholders as follows: Date
Loaned To
Amount 6/19/30
Wm. E. A. Christmann
$3,000.00 9/26/30
Wm. E. A. Christmann
4,000.00
12/20/30
Wm. E. A. Christmann
9,000.00
12/18/30
Wm. E. A. Christmann
2,000.00 1/ 6/31
F. G. Christmann
9,000.00 1/13/31
M. Beckemeier
9,000.00 3/30/31
Wm. E. A. Christmann
3,000.00
10/15/31
Wm. E. A. Christmann
35,000.00 1/ 2/33
Wm. E. A. Christmann
38,000.00
12/15/38
M. Beckemeler
1,000.00
12/12/39
M. Beckemeier
3,000.00
12/ 8/41
M. Beckemeier
2,000.00
*199 The loans from the company were evidenced by notes and bore interest. The 1941 loans bore interest at 2 percent. The other loans have been repaid. Petitioner early acquired a small portion of its present property improved with a brick office building at a cost of $10,000 for the land and $15,000 for the building. Shortly after Beckemeier came into the business petitioner purchased adjoining vacant land, increasing its holdings to two city blocks in a single tract of 191,400 square feet. The additional ground was acquired at a cost of $100,000. Petitioner proceeded to build sheds or warehouses. At that time petitioner suffered losses and had a deficit. In 1931 and in 1936 petitioner made major expansions in its plant, building an additional warehouse in each of those years. The major improvements of erecting warehouses, one each in 1925, 1931, and 1936, at an average cost of $15,000 each, were the most recent improvements undertaken by petitioner. In 1941 petitioner had no definite plans for going ahead with immediate additional improvements. Since 1932, when tentative drawings were made, it had contemplated erecting a new office and warehouse building at the other end of its *200 property which was made desirable by reason of the fact that the ground there was higher and not as subject to flooding during rainy seasons and by Mississippi River floods as the present site of its office. There was the additional advantage of available sewer connections. The improvements, if made, were anticipated to cost between $30,000 and $50,000, depending upon whether plywood or brick were used. Petitioner made no attempt at furthering these plans during war times because of an awareness of the difficulty in obtaining materials. By 1940 the Federal government had started construction of cantonments and was rapidly becoming the preferred and only customer for lumber and other building materials. The cost of lumber has been moving upward during the time petitioner has been in business, due in part to forest depletion and to increased demand. In 1941 certain types of lumber were 50 percent higher than in former years and on an average were 20 percent higher than in 1929. Inventories now require a larger investment for comparable footage than was required in former years. In addition, a lack of dry kiln facilities make it necessary for dealers to carry quantities of green lumber *201 for long seasoning periods which requires additional capital for inventory. Plywood is an important product of petitioner. Innumerable new uses are being found for it. The type lumber sheds now used by petitioner are not satisfactory for housing plywood and the growth in that business will require additional capital for storage facilities. During the taxable year petitioner was availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting earnings and profits to accumulate instead of being divided or distributed. Opinion The asserted application to this petitioner of section 102, claimed to result from its retention of earnings for the purpose of permitting its stockholders to avoid surtax, seems to us to be more readily dealt with in this instance by reference to the facts and the inferences which they compel than by resort to any statutory presumption. Somewhat more than the amount of net undistributed income for the year in question was currently transferred to the stockholders in proportions corresponding to their stock interests but by means of loans rather than distributions. This conferred upon them the benefits *202 of the corporate profits but without the surtax effect of the declaration of an equivalent dividend. ; ; . Since no purpose other than the avoidance of income tax upon these individuals was served by this operation, the inference is required that that was the corporate purpose. , affirmed (C.C.A., 5th Cir.), , certiorari denied, . It is claimed that there were prospective needs of the business not immediately realizable which called for relation of the funds involved. The immediate difficulty is that the corporation did not retain them, and its action in putting the stockholders in possession was not the equivalent. It is evident that petitioner could not anticipate repayment upon demand. One of the stockholders, for example, used the proceeds to purchase a farm. Had there been any reality to petitioner's desire to retain its surplus as a liquid asset, investment in government *203 bonds was an expedient with which it had shown itself to be familiar. And the yield was approximately the same as any interest which petitioner could expect to receive on the stockholders loans. This is not to be taken as suggesting that application of the statutory presumption would fail to call for the same result. Petitioner was not a mere holding or investment company, but the record could well support a determination that its earnings were permitted to accumulate beyond the reasonable needs of the business. We prefer, however, to rest the result more directly upon affirmative evidences of the condemned purpose and to conclude that there is no effective showing to indicate any reasonable solution except that petitioner made the loans and failed to distribute its earnings as dividends for the purpose of avoiding the imposition of surtax upon its shareholders. Decision will be entered for the respondent.